UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM E. WAMBACH,

Plaintiff,

v.

Case No. 2:16-CV-39
HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

This case contains a long history of social security benefits applications that have been denied and reconsidered on several occasions. The case began when Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on April 10, 2006, in which he alleged a disability onset date of February 28, 2005. PageID.51, 60, 144, 305, 309. This application was denied initially on July 27, 2006, and upon reconsideration on February 21, 2007. PageID.144. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on January 27, 2009. PageID.144. At the hearing, Plaintiff and a vocational expert testified. PageID.144. On February 11, 2009, the ALJ denied Plaintiff's application for benefits. PageID.149-150.

On April 24, 2009, Plaintiff filed a second Title II application for disability insurance benefits, as well as an additional application for supplemental security income. PageID.158. In both applications, Plaintiff maintained that he became disabled on February 28, 2005. PageID.158. These two applications were denied initially on October 8, 2009, and upon reconsideration on January 14, 2010. PageID.158. Plaintiff filed a written request for a hearing

on February 22, 2010. PageID.158. A hearing was held before ALJ Radensky on December 10, 2010, at which time Plaintiff and a vocational expert testified. PageID.158. Plaintiff was represented by counsel at that hearing. PageID.158. On January 27, 2011, the ALJ denied Plaintiff's application. PageID.68, 155-164. However, on November 19, 2013, the Appeals Council remanded the case for further consideration by the ALJ. PageID.51, 168-172.

ALJ Radensky held a second hearing on April 4, 2014. PageID.68. At the hearing, Plaintiff was represented by counsel. PageID.68. Testifying at the hearing were Plaintiff, two medical experts (Drs. Eric Schmitter and David Glassmire), and a vocational expert (Mr. Scott). PageID.68. In a decision issued June 17, 2014, the ALJ issued a partially favorable decision regarding Plaintiff's claim for benefits by finding that Plaintiff became disabled on his 55th birthday (May 3, 2012), at which time he entered the "advanced age category." PageID.51-60. However, the ALJ determined that Plaintiff was not disabled prior to that date. PageID.51-60. Plaintiff appealed the unfavorable portion of this decision to the Appeals Council, which denied his request for review on December 10, 2015. PageID.35-38. Plaintiff subsequently filed this action on February 12, 2016. ECF No. 1.

At Plaintiff's 2010 hearing before the ALJ, Plaintiff testified that he had not worked since February 28, 2005. PageID.118. Prior to 2005, Plaintiff was working in construction, but had to stop because he fell off of a scaffold at work. PageID.118. Plaintiff testified that this fall reinjured the fusion in his back that he received in 2003 after a skydiving accident. PageID.112. Plaintiff had not tried to apply for jobs since 2005. PageID.118. Since the accidents, Plaintiff said he is depressed and withdrawn. PageID.123-124. In addition, Plaintiff has diabetes, which he cannot control anymore since he can no longer exercise. PageID.125.

Plaintiff stated that he used a cane for walking. PageID.123. Plaintiff can sit or stand for fifty minutes at a time, and walk for a block. PageID.126-127. Plaintiff indicated that, before the accident, he received a bachelor's degree in political economics. PageID.119. Since 2007, Plaintiff was living in a seminary where he took classes on a full-time, and later part-time, basis. PageID.120.

Vocational Expert Scott also testified at the 2010 hearing. PageID.135. Mr. Scott indicated that Plaintiff's past relevant work consisted of a Scuba Diving Instructor, a Welder (skilled heavy), a Pipefitter, and a Plumber. PageID.136. Mr. Scott testified that none of these jobs had transferrable skills for a light exertional level occupation. PageID.137-138. The ALJ asked Mr. Scott whether a hypothetical person approaching advanced age (like Plaintiff at the time) with a college education and Plaintiff's past work history would be able to perform any unskilled, light work in the national economy. PageID.137. Mr. Scott indicated that such a person would be able to perform work as a House Cleaner (299,000 jobs nationally), a Cashier (850,000 jobs nationally), and a Parking Machine Operator (132,000 jobs nationally). PageID.137-138. The ALJ then asked Mr. Scott whether this hypothetical person would have any jobs available to him if this person were off task a third of the work day. PageID.138. Mr. Scott indicated that no jobs would be available to such a person. PageID.138.

During the remand hearing before the ALJ in April of 2014, Plaintiff added to his 2010 testimony by stating that he was awarded workers' compensation after he fell off the scaffold in 2005. PageID.72. Plaintiff testified that he started seeing a therapist and that he takes psychiatric medications. PageID.88-89. Plaintiff indicated that his back pain had become worse since 2009, and he sleeps periodically throughout the day because he does not sleep soundly at

night. PageID.99. Plaintiff stated that in 2009, he could walk a mile and bike for ten, but he cannot do that now due to the pain. PageID.99-100. Plaintiff testified that he still uses a cane when he has to walk far (i.e., a couple hundred yards). PageID.100. In addition, Plaintiff was diagnosed with stage three kidney failure in 2013. PageID.100-101.

Dr. Schmitter, an orthopedist, testified at the hearing primarily regarding Plaintiff's 2003 skydiving injuries. PageID.74. Dr. Schmitter stated that after that accident, Plaintiff fractured his right femur, which was treated with a rod and ultimately healed well. PageID.74. Dr. Schmitter also stated that Plaintiff suffered an L2 lumbar compression fracture that was bound with a fusion in 2003. PageID.74. While this injury decreased Plaintiff's lumbar motion, it did not result in neurologic deficits. PageID.74. Dr. Schmitter testified that Plaintiff had left shoulder problems after the skydiving accident as well, but that medical examinations showed that Plaintiff has a normal range of motion in his shoulder now. PageID.75. In addition, Dr. Schmitter noted that an examination from 2013 showed that Plaintiff had some limitations with regard to his carrying and lifting capacity, but no limitations on standing, walking, and sitting. PageID.75. Dr. Schmitter concluded that Plaintiff was limited to light work based on these past injuries. PageID.83.

Dr. Glassmire, a psychologist, also testified at Plaintiff's 2014 hearing. PageID.89. Dr. Glassmire testified that Plaintiff suffers from depression and anxiety. PageID.89. Based on these mental conditions, Dr. Glassmire limited Plaintiff's work abilities to non-complex, routine tasks; no tasks requiring hypervigilance; no fast paced work; and only occasional interaction with the public. PageID.90. In addition, Dr. Glassmire noted that Plaintiff reported that he can dress and bathe himself, do household chores, shop and cook, drive and go

out alone, pay the bills, and get along well with others. PageID.90. Dr. Glassmire also noted that Plaintiff is alert, responsive, cooperative, and well-groomed. PageID.90. In addition, Plaintiff's working memory was average, as was his intellectual functioning. PageID.90-91. However, Plaintiff had a significant weakness in processing speed, which is the reason Dr. Glassmire suggested limiting Plaintiff to no fast paced work. PageID.91.

Vocational Expert Mr. Scott also testified at the 2014 hearing. He reiterated his 2010 findings pertaining to Plaintiff's past relevant work. PageID.104. The ALJ asked Mr. Scott to evaluate Plaintiff's ability to perform his past relevant work based on a hypothetical. PageID.104-105. The hypothetical asked whether a person of Plaintiff's advanced age, education, and past work skills that had the following limitations would be able to perform any of Plaintiff's past relevant work: light work level; occasional postural activities; limited to non-complex, routine tasks, and no tasks requiring hypervigilance; no fast paced work; and only occasional interaction with the public. PageID.104. Mr. Scott indicated that this person would not be able to perform Plaintiff's past relevant work. PageID.104. However, this person could work as an Electronics Worker (40,000 jobs nationally), a Small Product Assembler (40,000 jobs nationally), or a Machine Operator (170,000 jobs nationally). PageID.104-105. Plaintiff's attorney then asked Mr. Scott whether this same hypothetical person would have those jobs available to him if he had marked limitations in concentration. PageID.112. Mr. Scott said there would not be any jobs available to such a person. PageID.112.

After the 2014 hearing, the ALJ concluded that Plaintiff suffers from an L2 compression fracture, status post T12-L3 fusion, unspecified depressive disorder, and unspecified anxiety disorder. PageID.54. Based on these conditions, and the ALJ's determination of

Plaintiff's physical capabilities, the ALJ concluded that Plaintiff became disabled on May 3, 2012. PageID.60.

Plaintiff filed an appeal on February 12, 2016 (ECF No. 1), alleging that the ALJ's decision to deny social security benefits to Plaintiff from February 28, 2005, through May 2, 2012, was improper. ECF No. 12. Defendant Commissioner of Social Security filed a response on June 29, 2016. ECF No. 13. Plaintiff has not filed a reply. The matter is now ready for a decision.

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella*

*v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). Steps four and five use the residual functional capacity assessment in evaluating the claim. *Id.*

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 28, 2005, the alleged onset date. PageID.53-54. At step two, the ALJ determined Plaintiff has the following severe impairments: history of L2 compression fracture, status post T12-13 fusion, unspecified depressive disorder, and unspecified anxiety disorder. PageID.54. At step three, the ALJ determined Plaintiff's impairments or a combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. PageID.54. At step four, the ALJ determined Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the additional limitations of: occasional postural activities; non-complex routine tasks that do not require hypervigilance; no fast paced work; and only occasional interaction with the public. PageID.54. At step five, the ALJ concluded that Plaintiff could not perform his past relevant work since that work exceeds his residual functional capacity. PageID.58. Before May 3, 2012, the ALJ determined that Plaintiff could have performed light work jobs such as an Electronics Worker (40,000 jobs nationally), a Small products Assembler

(40,000 jobs nationally), and a Packing Machine Operator (170,000 jobs nationally). PageID.59. However, after Plaintiff turned fifty-five (on May 3, 2012), the ALJ concluded that Plaintiff became a person of advanced age, thereby changing his status to disabled pursuant to Medical-Vocational Rule 202.06. PageID.59-60. In addition, the ALJ held that Plaintiff was not disabled at any time through December 31, 2010, his date last insured. PageID.60.

In Plaintiff's initial brief, he claims that the ALJ made several errors when deciding that Plaintiff was not disabled prior to May 3, 2012. Specifically, Plaintiff asserts that the following decisions by the ALJ were not supported by substantial evidence: (1) affording the opinions of Drs. Schmitter and Glassmire great weight; (2) failing to consider Plaintiff's combination of impairments, including diabetes, obesity, depression, and kidney failure; and (3) deciding Plaintiff's allegations of pain and disabling symptoms were not credible. PageID.1584. Upon review of the evidence of record, the undersigned recommends that the ALJ's findings be affirmed.

With regard to Plaintiff's first claim, Plaintiff contends that the ALJ erred by (1) discounting the opinion of Dr. Andrew Guo (an occupational specialist that saw Plaintiff once on January 12, 2011), and instead relying on the opinion of a non-examining source (Dr. Schmitter), and (2) by affording the non-examining psychologist's opinion (Dr. Glassmire) great weight even though it was inconsistent with the opinion of examining psychologist Dr. Daniel.

Under the regulations, an ALJ must weigh all medical opinions regardless of its source. 20 C.F.R. § 1527(c). The following factors should be considered when determining what weight to afford a medical opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of

the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 1527(c)).

In weighing Dr. Guo's opinion, the ALJ considered the nature of the visit, the length of the treatment relationship (one day), and the consistency of the opinion with the other medical evidence of record:

> Subsequent to the hearing, the claimant submitted Exhibit C18F, a one-time consultation by Dr. Guo on January 12, 2011. Although Dr. Guo stated that the claimant was "disabled," it is not clear that Dr. Guo was familiar with the definition of disability as contained in the Social Security Act and regulations. Dr. Guo's statement regarding the claimant's purported disability is also conclusory and does not detail the specific limitations of the claimant's conditions, nor does it list the objective medical findings upon which Dr. Guo based the opinion. In addition, Dr. Guo indicated "He takes care of himself primarily and does all activities of daily living for himself" (Exhibit C18F p.7). Lastly, it is also inconsistent with the medical records, which detail relatively unremarkable symptoms, and a routine and conservative treatment regimen consistent with those symptoms. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. This opinion is also inconsistent with the claimant's admitted activities of daily living, which have already been described above in this decision and include the claimant's testimony that he uses a cane only when ambulating long distances and only outside the house.

PageID.58. The ALJ's evaluation of Dr. Guo's medical opinion is thorough and complete.

Nonetheless, Plaintiff asserts that the ALJ's decision not to rely heavily on Dr. Guo's findings was improper because the ALJ did not provide sufficiently detailed reasons for declining to rely on this opinion. However, what Plaintiff fails to recognize is that Dr. Guo was

not a treating physician—he was a one-time consultative examiner. *See Hamper v. Comm'r of Soc. Sec.*, 714 F. Supp. 2d 693, 704 (E.D. Mich. 2010) (citing 20 C.F.R. § 404.1502) (noting that a treating physician is one that sees a patient "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."). As such, the ALJ was not required to provide "good reasons" for discounting Dr. Guo's opinion. *See* 20 C.F.R. § 1527(c)(2) (noting that when evaluating a *treating physician's* opinion, the ALJ should provide "good reasons" for the weight afforded to that opinion). Consequently, the ALJ did not err by failing to provide several reasons for not relying on Dr. Guo's opinion.

Moreover, an ALJ may rely on a medical advisor's testimony (such as that of Dr. Schmitter) over an opinion of an examining doctor (like Dr. Guo) so long as the medical advisors have access to the plaintiff's entire medical record, saw the plaintiff's demeanor at the hearing, heard the plaintiff's testimony at the hearing, and is a specialist. *See, e.g., Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Here, the ALJ did not err in relying on Dr. Schmitter's opinion and testimony because Dr. Schmitter had access to Plaintiff's entire medical record, was able to hear and observe Plaintiff's testimony during the 2014 hearing, and was an orthopedic specialist. PageID.57, 85. In fact, in his decision, the ALJ noted these precise factors as being reasons for affording Dr. Schmitter's opinion great weight:

> In determining the claimant's physical and mental residual functional capacity, the undersigned has given great weight to the opinion of the impartial medical experts, Drs. Schmitter and Glassmire. Generally, the opinions of non-examining medical sources are entitled to less weight than the opinions of treating and examining sources. However, it is possible in a particular case, depending on all the facts of that case, to give greater weight to the opinion of a non-examining source (20 CFR 404.1527(f) and 416.927(f); and SSR 96-6p). Any medical source opinion is entitled to such weight as is warranted after

> consideration of multiple factors including: testing and consultative evaluations by specialists; supportability, including the degree of explanation and support by objective evidence; consistency with the record as a whole; degree of specialization in the area of medicine involved; and other factors, including awareness of other evidence in the record, and understanding of social security disability programs and requirements. In this case, specifically, both Dr. Schmitter and Dr. Glassmire are specialists, have an awareness of all the medical evidence in the record, were present at the hearing to hear the claimant's testimony, and understand Social Security disability programs and requirements. Most important, these medical experts opinions are reasonable and consistent with the objective medical evidence.

PageID.57. Based on this information, it is clear that the ALJ did not err in relying on Dr. Schmitter's opinion over that of one-time examiner Dr. Guo.

Plaintiff's next claim is that the ALJ improperly afforded greater weight to consultative examiner Dr. Glassmire's mental health opinion over that of one-time examining psychologist Dr. Daniel. Dr. Daniel evaluated Plaintiff once on January 7, 2014. PageID.1328. At this examination, Dr. Daniel noted in her report that she did not have access to Plaintiff's past medical records, and that she was only evaluating the status of Plaintiff's physical impairments as of the date of the evaluation. PageID.1328. Notably, Plaintiff is only appealing the portion of the ALJ's decision that found him not disabled from February 28, 2005, through May 2, 2012. As a result, Dr. Daniel's January of 2014 medical opinion (that did not take into consideration any of Plaintiff's past medical history) is not relevant to Plaintiff's appeal. Consequently, the ALJ's decision not to rely on Dr. Daniel's opinion in relation to Plaintiff's pre-2012 disability status was permissible.

Plaintiff's second claim is that the ALJ erred by not addressing Plaintiff's severe impairments of obesity, chronic kidney failure, depression and diabetes at Step Two or when

addressing Plaintiff's limitations in the RFC. PageID.1590-1591. Plaintiff contends that while these impairments might not be severe on their own, when considered in combination, they significantly limit his ability to do basic work activities. Notably, Plaintiff did not mention his obesity as being an issue either in his application or before the ALJ during his hearings. As a result, this argument is considered waived. *Spuhler v. Colvin*, No. 2:13-CV-12272, 2014 WL 4855743, at *22 (E.D. Mich. June 17, 2014) (noting courts in this Circuit have "required claimants to exhaust all issues at the hearing level") (citing *Motin v. Comm'r of Soc. Sec.*, No. 09-CV-13354, 2010 WL 1754871, at **8-9 (E.D. Mich. Apr. 6, 2010), *adopted by* 2010 WL 1754821 (E.D. Mich. Apr. 30, 2010)); *see also Maloney v. Comm'r of Soc. Sec.*, 480 Fed. App'x 804, 809-10 (6th Cir. 2012) ("It is axiomatic that 'a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal.'") (citation omitted).

In determining a person's RFC, an ALJ should assess the person's "ability to do sustained work-related physical and mental activities in a work setting" for eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. An impairment is severe for purposes of an RFC determination when it is a "'medically determinable' physical or mental impairment or a combination of impairments that significantly limit(s) an individual's physical or mental ability to perform basic work activities." *White v. Colvin*, No. 14-CV-12870, 2015 WL 5210243, at *6 (E.D. Mich. Sept. 3, 2015) (citing 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c)). The regulations state that basic work activities include:

> 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handline; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers, and usual work situations;

and 6) dealing with changes in a routine work setting.

*White*, 2015 WL 5210243, at *6 (citing 20 C.F.R. § 416.921(b)). Notably, an RFC is not the least a person can do, but the most a person can do despite his limitations or restrictions. SSR 96-8p. Plaintiff bears the burden of providing the medical evidence showing the severity of his conditions. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

With regard to Plaintiff's depression, kidney failure, and diabetes, Plaintiff provided testimony indicating that his depression makes him withdrawn and emotional (PageID.123-124), that he cannot control his diabetes since he can no longer exercise (PageID.125), and that he was diagnosed with stage three kidney failure in 2013 (PageID.101). Plaintiff testified that his diabetes and depression make him tired. PageID.100.

In his opinion, the ALJ acknowledged that Plaintiff's depression was a severe impairment since February 28, 2005. PageID.54. As a result, the ALJ did not improperly exclude depression from his RFC finding. With regard to Plaintiff's kidney failure, Plaintiff was not diagnosed with this condition until 2013, which means it is not applicable to Plaintiff's appeal of the ALJ's decision finding him not disabled from February of 2005 to May of 2012. Finally, with regard to Plaintiff's diabetes, Plaintiff did not provide evidence to the ALJ demonstrating that his diabetes severely effects his ability to work. Rather, the medical evidence Plaintiff provided shows that from 2006 to 2010, Plaintiff's diabetes was controlled. PageID.1188, 1190-1191, 1201, 1205, 1210-1212, 1214, 1218-1219, 1270, 1290-1292, 1294. Moreover, to the extent Plaintiff testified that his diabetes makes him too tired or fatigued to work, the ALJ did not find Plaintiff's testimony credible when compared to the evidence of record, as will be discussed in relation to Plaintiff's final claim. Therefore, the ALJ did not err by failing to find Plaintiff's

combination of impairments severe for purposes of his RFC finding.

Finally, Plaintiff asserts that the ALJ improperly concluded that Plaintiff's complaints of pain were not credible. PageID.1591-1592. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). An ALJ's determination of a Plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. For example, simply stating that Plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th

Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532.

In determining Plaintiff's allegations of pain and disabling symptoms were not credible, the ALJ identified several inconsistencies between Plaintiff's testimony and the medical records provided. The ALJ properly evaluated and considered Plaintiff's allegations of pain in his decision:

> The claimant alleges that he is disabled due to a number of ailments, both physical and mental. At the prior hearing, the claimant testified that he had lived at the seminary in Camarillo since 2007 during the fall and spring semesters only. When he was not at the seminary he lived in a house in Grand Terrace with about 10 other people. Prior to that, in 2003 he had a skydiving accident and recovered. He has used a cane for over 2 years. His diabetes was uncontrolled as he could not exercise. He said he was taking two classes each day for 3 days. He was able to sit for 50 minutes then had to get up and walk around. He said he could occasionally lift 15 pounds. There was some shakiness in his hands and he would be too fatigued and emotional to work for 8 hours. At the current hearing, the claimant testified that he uses the cane when walking long distances and only outside the house. He stated there have been marked problems and decline in his kidney function. He started taking insulin around 2011. In addition, the claimant reported he did not finish the program at the seminary as he was asked to leave.

PageID.55. Despite Plaintiff's above-mentioned allegations, the ALJ determined that Plaintiff's testimony regarding his pain and disabling symptoms was not credible:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> From 2003, the claimant sought treatment as a result of a parachute injury and underwent thoracolumbar fusion. He returned to his past work until an injury to his back in 2005. Treatment was conservative in nature although surgery was recommended in 2007 but not approved by the insurance company. The claimant has been extensively examined and evaluated throughout the Workers' Compensation process and examining orthopedists A. Michael Moheimani, M.D., and Joseph Laughlin, M.D., both repeatedly indicated that claimant had the capacity to perform a range of work at the light exertional level and the claimant himself stated he could lift 10 to 20 pounds (Exhibit C1F p.4). Eventually, the claimant sought treatment at the Loma Linda VA Hospital and received physical therapy for the left shoulder, routine diagnostic testing, and follow-up care through 2013 (Exhibit C2F-C11F). X-rays of the thoracic spine in November 2010 revealed degenerative joint disease from T1 through T12 with marginal osteophytosis at T7-8, T11-12 (Exhibit C10F p.10).

PageID.56-57. The ALJ's assessment of Plaintiff's pain and disabling symptoms is thorough and complete. The ALJ properly concluded that Plaintiff's allegations were inconsistent with the medical evidence. *See, e.g., Winslow*, 566 Fed. App'x at 422 (demonstrating that ALJ found claimant's alleged functional limitations not credible because it largely conflicted with credible, objective medical evidence).

Nevertheless, Plaintiff claims that the ALJ (1) improperly "cherry picked" the medical evidence of record when determining Plaintiff's allegations of pain and disabling symptoms were inconsistent with the record, (2) improperly relied on Plaintiff's activities of daily living in finding Plaintiff not credible, and (3) failed to provide sufficiently specific reasons for finding Plaintiff not credible. PageID.1592-1594.

Insofar as Plaintiff accuses the ALJ of cherry picking treatment notes to favor his decision, the Sixth Circuit has said (in relation to this precise argument) that "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572

F.3d 272, 284 (6th Cir. 2009). Ironically, in fact, Plaintiff could be accused of cherry picking himself, seeing as he has highlighted only the evidence of record that supports his position. Ultimately, upon review of the record, it is clear that the ALJ did not cherry pick evidence from Plaintiff's medical history to support his disability determination.

With regard to Plaintiff's complaint that the ALJ improperly relied on Plaintiff's activities of daily living when finding Plaintiff not credible, this argument fails. It is clear that an ALJ may consider, in conjunction with the other evidence of record, a person's ability to engage in daily activities when determining whether this person is eligible for disability. *See* 20 C.F.R. § 404.1529(c)(3)(i) (noting ALJ's may consider other evidence aside from the objective medical evidence, such as activities of daily living, to determine a person's symptoms). Moreover, an ALJ may discredit a person's testimony when it contradicts the evidence provided, which may include reports of daily living activities. *Walters*, 127 F.3d at 531-32. Here, the ALJ noted that Plaintiff's testimony pertaining to the severity of his symptoms was not credible partially because it was inconsistent with his reported activities of daily living. PageID.56-57. Because an ALJ may consider a plaintiff's activities of daily living when making a credibility determination, Plaintiff has not demonstrated that reversal or remand is appropriate on this basis..

Plaintiff also asserts that the ALJ improperly relied on the opinions of Drs. Moheimani and Laughlin when determining that Plaintiff's testimony was not credible. Specifically, Plaintiff asserts that because these two physicians' opinions were done over a year before February 12, 2009 (the earliest date for which the ALJ was required to determine disability), they should not have been relied upon in the ALJ's decision. However, in determining a person's disability status, an ALJ is required to "develop [a person's] complete medical history

for *at least* the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 404.1512(d) (emphasis added). Plaintiff provided the ALJ with a reason to consider an earlier period by maintaining that his alleged onset date was February 28, 2005, and by submitting medical records for the ALJ to review dating back to 2006. Consequently, the ALJ did not err by partially relying on the opinions of Drs. Moheimani and Laughlin when determining Plaintiff's testimony was not credible.

Furthermore, to the extent Plaintiff argues that the ALJ is biased based on his approval ratings on the website disabilityjudges.com (PageID.1594), this assertion lacks merit. Judges are afforded a strong presumption of impartiality that may only be "rebutted by a showing of conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). The only information Plaintiff provided to demonstrate that the ALJ was biased in his case was an approval rating from a generic website that is neither supported nor condoned by the Social Security Administration. PageID.1594. Moreover, upon review of the hearing transcript, it is clear that the ALJ's statements and subsequent opinion did not show any evidence of judicial bias. *Thornsberry v. Comm'r of Soc. Sec.*, 37 Fed. App'x 749, 752 (6th Cir. 2002). Therefore, Plaintiff's vague allegations of judicial bias are unsupported in the record, meaning Plaintiff has failed to overcome the strong presumption of judicial impartiality. *See Schweiker*, 456 U.S. at 195-96.

Finally, Plaintiff argues that the ALJ should have evaluated Plaintiff's application under the "older age category" because his 55th birthday was "approximately four months" after his date last insured (December 31, 2010, PageID.53) for Title II benefits. Plaintiff cites 20

C.F.R. § 404.1563(b) to further this argument. Section 404.1563(b) states:

> If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b). Plaintiff contends that because the ALJ did not "consider" whether to use the older age category, his decision is flawed. Notably, however, Plaintiff was not "approximately four months" from turning fifty-five before his date last insured; rather, he was approximately fifteen months from turning fifty-five (as his birthday is May 3, 1957, PageID.1577). Fifteen months is more than "a few months" from reaching an older age category according to section § 404.1563(b). *See, e.g., Lewis v. Comm'r of Soc. Sec.*, 666 F. Supp. 2d 730, 739 (E.D. Mich. 2009) (noting that an ALJ was not required to evaluate a person in a higher age category when the person was *eleven* months from his 55th birthday at the time his insured status expired); *see also Bouschor v. Colvin*, No. 2:15-CV-47, 2016 WL 336099, at *7 (W.D. Mich. Jan. 26, 2016) (noting six months was not "a few months" for purposes of 20 C.F.R. § 404.1563(b)). Even if Plaintiff were within a few months of being in the older age category, "§ 1563(b) does not impose on ALJs a *per se* procedural requirement to address borderline age categorization in every borderline case." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Accordingly, the ALJ did not err by failing to place Plaintiff in the advanced age category, or discuss the reasoning for not doing so in his decision.

Overall, based on the aforementioned analyses, it is recommended that Plaintiff's request to remand this case to the Social Security Administration pursuant to Sentence Four or Six of 42 U.S.C. § 405(g) be denied. There is substantial evidence in the record that supports the

Commissioner's decision that Plaintiff was not disabled prior to May 3, 2012, as defined by the Social Security Administration. In addition, Plaintiff has not provided new or previously unavailable evidence to support his claim. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) (noting that new evidence is that which did not exist or was unavailable at the time of the hearing). In fact, Plaintiff makes no argument that he has new and material evidence for the courts to consider on remand. Instead, Plaintiff argues that his previously admitted evidence was improperly considered by the ALJ. Consequently, the undersigned concludes that the Plaintiff has not met his burden to grant a reversal or remand in this case pursuant to Sentence Four or Six of 42 U.S.C. § 405(g).

In light of the foregoing, the undesigned recommends that the decision of the Commissioner be AFFIRMED and that Plaintiff's request for relief be DENIED.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3. Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Date: ___7/21/2016_____

_/s/ *Timothy P. Greeley*_________________
HON. TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE